UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| GENERAL STAR NATIONAL INSURANCE COMPANY, | ) ) | |
| | ) | Civil Action No. 6:22-CV-189-CHB |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| TERRY FLINCHUM CPA, INC., et al., | ) ) | |
| Defendants. | ) ) | |

*** *** *** ***

This matter is before the Court on the parties' responses to the Court's December 27, 2022 order. [R. 23]. In that order, the Court directed the parties to file simultaneous briefs on the issue of whether the Court should exercise its discretionary jurisdiction under the Declaratory Judgment Act. *Id.* In response, Defendant Bridgett Miracle filed a "Memorandum as to Whether the Court Should Exercise Jurisdiction Pursuant to the Declaratory Judgment Act and Motion to Dismiss" ("Motion to Dismiss"), [R. 24], and Defendants Terry Flinchum CPA, Inc. and Terry Flinchum (collectively, "Flinchum Defendants") filed a Motion to Dismiss for Lack of Jurisdiction ("Motion to Dismiss"), [R. 25]. Plaintiff General Star National Insurance Company ("General Star") filed a Memorandum of Law in Support of Jurisdiction, [R. 26]. Each party filed a response brief. [R. 27; R. 28; R. 29]. No replies were filed. These matters are therefore ripe for review. For the reason set forth below, the Court will grant the Motions to Dismiss, [R. 24; R. 25], and dismiss this case without prejudice.

## I.  BACKGROUND

### A.  The General Star Policy

Terry Flinchum is a Certified Public Accountant ("CPA") who owns and operates an accounting business, Terry Flinchum CPA, Inc., out of his residence in Pulaski County, Kentucky. *See* [R. 1-7, ¶ 11 (State Court Am. Complaint)]. On April 12, 2021, Flinchum, acting on behalf of his accounting firm, executed a General Star Accountants Professional Liability Renewal Application ("Renewal Application"), seeking to renew the firm's professional liability insurance with General Star. *See* [R. 1-2 (Renewal Application)]. In the "Changes to Firm" section of the application, Flinchum responded "no" to the following inquiries:[1] "[b]een subject to any fine, reprimand, [or] criminal penalty, related to the performance of professional services"; "[h]ad any claims or suits been brought against the applicant firm, a predecessor of the firm, or any current or past officer, owner or employed accountant thereof"; and [k]now of any circumstances which may result in a claim being made." *See id.* at 4. General Star thereafter issued Accountants Liability Insurance Policy Number NJA330257A ("the Policy") to Terry Flinchum CPA, Inc. for the policy period beginning May 1, 2021 and ending May 1, 2022. *See* [R. 1-3 (the Policy)].

The "Coverage" section of the Policy explains that, "[s]ubject to the Limits of Liability and Deductible, [General Star] will pay on behalf of the Insured the Damages from Claims the Insured is legally obligated to pay resulting from Wrongful Acts to which this insurance applies." *Id.* at 11. A "claim," as defined by the Policy, is "a demand for money, the filing of Suit or the institution of arbitration or mediation proceedings, naming the Insured and alleging a Wrongful Act." *Id.* at 22. A "wrongful act" is defined in turn as "personal injury," which means "injury, other than Bodily Injury, based on or arising out of . . . [f]alse arrest, detention or

---

[1] Most of the questions in the "Change to Firm" section are incomplete in that they do not identify the subject of the question. For example, one question is simply "[d]iscretionary authority to invest or control client funds?" *See* [R. 1-2, p. 4].

- 2 -

imprisonment," among other things. *Id.* at 23, 25. A "wrongful act" also includes "[a]cts, errors or omissions, arising out of the rendering or failure to render Professional Services by any insured." *Id.* at 25. "Professional services" includes "[s]ervices performed or advice given in accountancy, financial planning and consulting." *Id.* at 24. Lastly, an "insured" includes the Named Insured (here, Terry Flinchum CPA, Inc., *see id.* at 2), any predecessor firm or successor in business, and "[a]ny past or present owner, partner, officer, director, stockholder, member, managing member or employee of" the Named Insured (or any predecessor firm or successor in business), "but only to Professional Services performed within the course and scope of their contract" with the Named Insured (or any predecessor firm or successor in business). *Id.* at 17.

The Policy provides coverage for claims and suits that are made and reported during the policy period (May 1, 2021 through May 1, 2022) and arise from wrongful acts that took place during the policy period. *Id.* at 11. It also covers claims and suits that are made and reported during the policy period and arise from wrong acts that took place *prior to* the policy period so long as "[t]he Wrongful Act took place on or after the Retroactive Date" and "[a]t the Inception Date of the Policy Period, no Insured knew of any Wrongful Act that may reasonably be expected to give rise to a Claim or Suit against an Insured." *Id.* For claims and suits covered by the Policy, General Star will pay damages that the Insured is otherwise legally obligated to pay, and it further has "the right and duty to defend" in such cases. *Id.* However, the Policy provides that General Star has "no duty to defend any Claim or Suit against any Insured seeking Damages for a Wrongful Act to which this insurance does not apply." *Id.*

The Policy contains certain exclusions relevant here. Under Exclusion 1, for example, General Star has no obligation to pay damages or to provide a defense in connection with any claims or suits based on or arising out of "[d]ishonest, fraudulent, criminal, knowingly wrongful,

willful, malicious or intentional Wrongful Act(s)." *Id.* at 19. Exclusion 8 similarly provides that General Star has no obligation to pay damages or provide a defense in connection with any bodily injury or property damage. *Id.* at 20. "Bodily injury" is defined by the Policy as "bodily injury, sickness, disease, emotional distress or mental anguish sustained by a person, including death resulting from any of these at any time." *Id.* at 22.

### B.  The State Court Actions

On April 7, 2021, prior to executing the Renewal Application, Flinchum was indicted in Pulaski Circuit Court on one count of "Sexual Abuse, First Degree by having sexual contact with Bridgett Miracle through the use of forcible compulsion." *See* [R. 1-4 (April Indictment)]. The indictment stemmed from allegations that, on or about February 24, 2021, Flinchum had sexually abused a client, Miracle, at his accounting office while she was there for tax services. [R. 1-4; R. 1, ¶ 29]. On April 9, 2021, Flinchum was arrested. [R. 1-9 (Executed Indictment Warrant)]. Shortly thereafter, on June 2, 2021, a second indictment was returned against Flinchum. *See* [R. 1-6 (June Indictment)]. In that indictment, Flinchum was charged with Sexual Abuse, First Degree, for having sexual contact with another client, A.B.M., by forcible compulsion on or about February 10, 2021. *See id.*

On July 28, 2021, Miracle filed a civil lawsuit in the Pulaski Circuit Court, naming as defendants Terry Flinchum, Patricia Flinchum, and Terry Flinchum CPA, Inc. On July 5, 2022, she filed a First Amended Complaint. [R. 1-7 (State Court Am. Complaint)]. In that Amended Complaint, Miracle alleges that, on the morning of February 24, 2021, she visited Flinchum "to drop off documents to be used in preparation of her income taxes." *Id.* ¶ 12. As she entered the office, Flinchum allegedly moved "into [Miracle's] space to hug her, and while she attempted to give him a side hug, he pulled her in tight and held her for an extended period, after which he

released her." *Id.* ¶ 18. Flinchum allegedly placed himself between Miracle and the office exit before making inappropriate comments. *Id.* ¶¶ 19–20. He allegedly pulled Miracle to him and "began rubbing her back while calling her beautiful." *Id.* ¶¶ 20–21. Miracle further alleges that Flinchum went on to grab Miracle's buttocks, grope her breast while breathing heavily and moaning, kiss the top of her head, and attempt to kiss her on the mouth, while making suggestive comments. *Id.* ¶¶ 23–24. Miracle alleges that she was eventually able to free herself and leave the office, after which she immediately reported the incident to the Pulaski County Sheriff's Department. *Id.* ¶¶ 30–31. As part of the Sheriff's Department's investigation, Miracle engaged in a recorded phone call with Flinchum, during which "he admitted to the unwanted and outrageous sexual touching." *Id.* ¶ 32.

Based on these allegations, Miracle asserts the following causes of action against Flinchum and his accounting firm: Assault and Battery (Count I); False Imprisonment (Count II); "Intentional Infliction of Emotional Distress/Outrage/Punitive Damages" (Count III); Breach of Fiduciary Duties (Count IV); and Professional Negligence (Count V). *Id.* at 6–10. She also asserts a negligence claim (VI) against Patricia Flinchum, a joint possessor and owner of the residence in which the firm is located, for what appears to be premises liability (i.e., failure to warn of potential dangers). *Id.* at 10–11. Lastly, she asserts a claim for punitive damages (Count VII). *Id.* at 11.

### C.  The Present Action

After receiving notice of the Miracle civil suit, General Star agreed to provide a defense to Flinchum and the accounting firm, subject to a reservation of rights. [R. 1, ¶ 34]. On October 6, 2022, General Star filed its "Complaint for Declaratory Judgment and Rescission" in this

Court. [R. 1]. In doing so, General Star invoked this Court's diversity jurisdiction under 28

U.S.C. § 1332 and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* at 1.

In the rescission claim (Count I), General Star alleges that, "[a]t the time of his execution

of the Renewal Application, Flinchum was aware of circumstances which might result in a claim

being made against him and/or Terry Flinchum CPA Inc." *Id.* ¶ 38. More specifically, General

Star alleges that, "prior to April 12, 2021, Flinchum was aware that he had been indicted for the

charge of sexually assaulting a client in his office," and the indictment and the sexual encounter

with Miracle "were circumstances which may result in a claim being made." *Id.* ¶¶ 39, 40.

General Star further alleges that, had it known of the indictment, it "would not have issued the

General Star Policy to Terry Flinchum CPA Inc." *Id.* ¶ 41. Due to Flinchum's alleged material

misrepresentation, General Star argues that is entitled to rescind the General Star Policy. *Id.* ¶ 42.

General Star therefore asks this Court to "enter[] an order of rescission . . . thereby voiding the

General Star Policy." *Id.* at 10.

General Star next brings three claims for declaratory judgment. *Id.* at 10–13. In Count II,

the insurance company alleges that, prior to the Policy's inception on May 1, 2021, "Flinchum

knew of acts, errors or omissions that might reasonably be expected to give rise to a Claim or

Suit against him." *Id.* at 10. As a result, General Star argues that Miracle's civil suit, which was

first made or reported during the policy period and related to wrongful acts occurring *prior to* the

policy period, was not a covered claim or suit under the Policy. *Id.* In Count III, General Star

alleges that Exclusion 8 of the Policy (the "Bodily Injury Exclusion") applies because Miracle

seeks damages arising out of alleged bodily injury, emotional distress, and/or mental anguish. *Id.*

at 11. Lastly, in Count IV, General Star alleges that Exclusion 1 (the "Criminal Acts Exclusion")

applies because the state civil suit arises out of a "criminal, knowingly wrongful, and/or

intentional act, and an intentional and knowing violation of the law." *Id.* at 12–13. For each of these three declaratory judgment claims, General Star asks this Court to enter a judgment declaring that General Star has no obligation to defend or indemnify any insured[2] under the Policy. *See id.*

The Court thereafter ordered the parties to file simultaneous briefs on the issue of whether the Court should exercise its discretion to accept jurisdiction under the Declaratory Judgment Act. [R. 23]. In response, the defendants filed their Motions to Dismiss, [R. 24, R. 25], and General Star filed a Memorandum of Law in Support of Jurisdiction, [R. 26]. Each party filed a response brief. [R. 27; R. 28; R. 29]. No replies were filed.

## II. ANALYSIS

### A. Abstention Doctrines

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Generally speaking, parallel proceedings in state court do not detract from this "unflagging obligation." *Id.* Nevertheless, "considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (discussing *Colorado River*). In other words, despite its obligation to exercise jurisdiction, a federal district court has some discretion to stay or dismiss a case under certain circumstances, such as where there exists a related and ongoing state court lawsuit.

---

[2] For Count II, General Star seeks only a declaratory judgment that it is not obligated to defend or indemnify Defendant Flinchum. *See* [R. 1, p. 10]. For Counts III and IV, General Star seeks a declaratory judgment that it is not obligated to defend or indemnify "any Insured." *See id.* at 12, 13.

These principles are embodied in the *Colorado River* abstention doctrine. This doctrine allows a federal district court to stay or dismiss a lawsuit if there is a substantially similar parallel state court proceeding underway and "the proposed litigation in federal court would be duplicative or unwise." *Principal Life Ins. Co. v. Doctors Vision Center I, PLLC*, No. 5:12-cv-00125-JHM-LLK, 2013 WL 1625132, *2 (W.D. Ky. Apr. 15, 2013) (citing *Colo. River*, 424 U.S. at 817–18; *Bates v. Van Buren Tp.*, 122 F. App'x 803, 806 (6th Cir. 2004); *Gottfried v. Med. Planning Servs., Inc.*, 142 F.3d 326, 329 (6th Cir. 1998)). Application of this doctrine "is appropriate only when: (1) the state and federal proceedings are parallel and (2) *Colorado River*'s eight factors weigh in favor of abstention" *Novak v. Federspiel*, No. 21-1722, 2022 WL 3046973, at *2 (6th Cir. Aug. 2, 2022) (citing *Romine*, 160 F.3d at 340–41)). If these criteria are satisfied, the district court may stay the federal proceeding pending resolution of the state matter, or it may dismiss the federal suit. *Preston v. Eriksen*, No. 95-3751, 1997 WL 14418, at *4 (6th Cir. Jan. 14, 1997) (explaining that *Colorado River* "permits a federal court to stay or dismiss an action when a parallel state court action is pending and extraordinary circumstances exist" (citing *Colo. River*, 424 U.S. at 813)).  Generally, however, "extraordinary circumstances" must exist to warrant abstention under the *Colorado River* doctrine. *Id.*; *see generally Colo. River*, 424 U.S. at 813 (explaining that abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it").

A less stringent standard applies to declaratory judgment claims. *See Principal Life*, 2013 WL 1625132 at *2 (describing *Colorado River* as "the more stringent standard"); *United States v. Com. of Pa., Dept. of Environmental Resources*, 923 F.2d 1071, 1074 (3d Cir. 1991) (describing district court's discretion under the Declaratory Judgment act as "significantly greater" than under *Colorado River*). The Declaratory Judgment Act provides that, "[i]n a case of

actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)).

The doctrine by which district courts consider whether to exercise their discretion over declaratory claims is often referred to as the *Wilton/Brillhart* doctrine, named after two primary Supreme Court cases that address the issue. *See Wilton*, 515 U.S. at 289–90; *Brillhart*, 216 U.S. at 494–95. Generally speaking, this doctrine allows a federal court to abstain from exercising jurisdiction over a declaratory judgment action if there is another suit pending in state court that involves the same parties and would provide an opportunity for resolution of state law issues. *See* 36 C.J.S. *Federal Courts* § 76 (2023) (discussing *Wilton/Brillhart* doctrine). To guide the application of this doctrine, the Sixth Circuit has identified several factors for a district court to consider. Those factors are outlined in *Grand Trunk* and explained in more detail below. *See Grand Trunk*, 746 F.2d at 326; *infra* Section II(C). Ultimately, these factors must be balanced against "considerations of efficiency, fairness, and federalism." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). If upon balancing these factors, the Court finds that they weigh against the exercise jurisdiction, it may dismiss the case without prejudice. *See, e.g.*, *Frankenmuth Mut. Ins. Co. v. Balis Campbell, Inc.*, 510 F.Supp.3d 482, 503 (E.D. Ky. 2020) (dismissing case without prejudice after weighing *Grand Trunk* factors).

In the present case, the defendants argue that General Star's rescission claim "is part and parcel of the Declaratory Judgment action and should not be considered as a separate and distinct claim." [R. 27, p. 2]; *see also* [R. 28, p. 1 (noting that "Plaintiff's rescission distinction is one without a difference")]. Thus, they argue, the case is best characterized as one for declaratory relief, thereby allowing the Court to decline jurisdiction and dismiss the case in full after application of the *Grand Trunk* factors. *See* [R. 24; R. 25-1]. In response, General Star agrees that "[t]his Court does have discretion as to whether to assume jurisdiction over claims for declaratory relief." [R. 26, p. 2]. However, it argues, "this discretion does not extend to non-declaratory claims, such as General Star's claim for rescission of the General Star Policy." *Id.* Instead, General Star urges this Court to (1) apply the *Colorado River* abstention doctrine to the rescission claim and find that abstention is unwarranted; (2) find that the rescission claim is closely intertwined with the declaratory judgment claim and as a result, the Court must retain jurisdiction over both claims; and (3) if the Court determines that the two claims were not closely intertwined, find that the *Grand Trunk* factors still weigh in favor of exercising jurisdiction over the declaratory judgment claim. *Id.* at 4–13.

Accordingly, the Court first considers which abstention doctrine, if any, applies when a complaint includes both a claim for declaratory relief and a claim for rescission. In other words, to what extent does the Court have discretion to exercise jurisdiction over General Star's claims? In considering this question, the Court has reviewed a plethora of case law from this circuit and others. These cases can be sorted into two categories: suits involving claims for declaratory and monetary or injunctive relief, and suits involving declaratory judgment and rescission claims. The Court addresses the relevance of these various cases below.

### A.  Claims for Declaratory Relief and Monetary or Injunctive Relief

The Sixth Circuit has never directly addressed which abstention doctrine, if any, should be applied when a complaint includes a claim for declaratory relief and a claim for rescission. *See TDC Specialty Ins. v. Masonic Homes of Kentucky, Inc.*, No. 3:19-CV-619-CHB, 2020 WL 13548690, *1 (W.D. Ky. Aug. 3, 2020) (explaining that the Sixth Circuit has not addressed this issue); *Principal Life*, 2013 WL 1625132, at *3 (same). Other circuits are split on the issue. *See id.* at *3 (examining circuit split); *Harding v. Apartment Inv. and Management Co.*, No. 3:10-CV-439-H, 2011 WL 211528, at *3 n.1 (W.D. Ky. Jan. 20, 2011) (same).

However, the Sixth Circuit has addressed a similar issue in a case involving claims for declaratory and injunctive relief. In *Adrian Energy Associates v. Michigan Public Service Commission*, 481 F.3d 414 (6th Cir. 2006), several small power companies sought relief before the Michigan Public Service Commission, which ultimately ruled against the companies. The companies appealed in state court, but also brought suit in federal court, seeking declaratory and injunctive relief to effectively prevent the state agency from enforcing its order. *Id.* at 418–419. The federal district court declined to exercise its jurisdiction under the Declaratory Judgment Act and dismissed the suit without prejudice. *Id.* at 419. On appeal, the Sixth Circuit affirmed the lower court's decision to decline jurisdiction, but on other grounds not relevant here.[3] Before reaching this conclusion, however, the Sixth Circuit first explained why it disagreed with the district court's analysis. It explained,

> When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address*, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and

---

[3] Specifically, the Sixth Circuit found abstention appropriate under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), which "requires federal courts to abstain from jurisdiction where to assume jurisdiction would 'be disruptive of state efforts to establish a coherent policy with respect to a matter of public concern.'" *Id.* at 423 (quoting *Colo. River*, 424 U.S. at 814). General Star insists that the *Burford* doctrine is inapplicable here, and no defendant seeks to apply it. *See* [R. 26, p. 6 n.1].

> a stay or dismissal would not save any judicial resources. The claims in this case
> for which declaratory relief is requested and those for which injunctive relief is
> requested are so closely intertwined that judicial economy counsels against
> dismissing the claims for declaratory judgment relief while adjudicating the claims
> for injunctive relief.

*Id.* at 422 (emphasis in original).

Some district courts within this circuit have relied on this passage from *Adrian Energy* when considering whether to abstain from mixed cases involving claims for both declaratory and monetary relief. For example, in *Tibbitts v. Great Northern Insurance Co.*, 2:20-cv-10029, 2020 WL 4333546 (E.D. Mich. July 28, 2020), the district court considered whether it should decline jurisdiction over the plaintiff's declaratory claims and remand those matters to state court, while retaining jurisdiction over the plaintiff's breach of contract and statutory penalty claims (i.e., claims for monetary relief). *Id.* at *2. That court first determined that it had jurisdiction over the monetary claims, irrespective of the claims for declaratory relief. *Id.* It further concluded that it would be forced to retain those monetary claims, regardless of whether the declaratory claims were remanded. *Id.* Citing *Adrian Energy*, it found that the monetary and declaratory claims were "closely intertwined," and judicial economy counseled in favor of retaining the entire suit. *Id.* Other district courts have ruled similarly, though not all have cited *Adrian Energy* for support. *See Farris v. State Farm Ins. Co.*, 617 F.Supp.3d 654, 659 (N.D. Ohio 2008); *Knowlton Const. Co. v. Liberty Mutual Ins. Co.*, 2:08-cv-0748, 2007 WL 4365690 (S.D. Ohio Dec. 14, 2007).

For some courts, the jurisdictional analysis ends there. However, for cases in which there exists a parallel state court proceeding, some district courts go on to consider abstention under *Colorado River*. For example, in *Harding*, the plaintiff filed a state court lawsuit seeking declaratory relief and damages for claims of "unjust enrichment, equitable estoppel, fraud in the

inducement, fraud with respect to additional payments, and breach of fiduciary duties arising out of multiple business relationships." 2011 WL 211528, at *1. The defendants removed the matter to federal court on the basis of diversity, then asked the district court to abstain from deciding the federal case because another state court case remained pending in California. *Id.* at *1. The parties disagreed as to whether the court should apply *Colorado River* or the *Wilton/Brillhart* doctrine. *Id.* at *3. The Court, citing to *Adrian Energy*, noted that at least some of the plaintiff's non-declaratory claims were "related to" his claim for declaratory relief. *Id.* Because that claim was "intertwined with at least some of his other claims," the Court proceeded with a *Colorado River* analysis as to all claims. *Id.*

Other district courts have taken a bifurcated approach to cases involving claims for declaratory and monetary relief. In those cases, the courts consider whether they should exercise their discretionary jurisdiction over the declaratory claims (after application of the *Grand Trunk* factors), while separately considering whether they must retain jurisdiction over the claims for monetary and injunctive relief. *See Ceres Enterprises, LLC v. Travelers Ins. Co.*, No. 1:20-CV-01925, 2021 WL 110789 (N.D. Ohio Jan. 12, 2021); *Family Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-cv-01922, 2021 WL 110797 (N.D. Ohio Jan. 12, 2021); *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-cv-1204, 2020 WL 5909806 (N.D. Ohio Oct. 6, 2020).

These cases hardly present a unified approach to actions involving claims for both declaratory and monetary relief. In fact, at least one district court in this circuit has taken a much different approach. In *Pupp v Illinois Union Ins. Co.*, No. 1:09-cv-532, 2010 WL 1258179 (W.D. Mich. Mar. 29, 2010), the district court declined to adopt the defendants' argument that it *must* accept jurisdiction over the non-declaratory claims. *Id.* at *4. It instead found that the non-declaratory claims "emanate from the declaratory matter at issue and are not appropriately

considered as existing independently of [the plaintiff's] request for a declaratory relief, such that this Court's jurisdiction is mandatory." *Id.* Because the *Grand Trunk* factors weighed in favor of declining jurisdiction over the declaratory claims, the Court remanded the entire suit. *Id.*

In the present case, General Star first asks the Court to find that the *Colorado River* factors support retention of the rescission claim, and the rescission claim is so "closely intertwined" with the declaratory claims that the Court must retain jurisdiction over the entire matter. [R. 26, pp. 5–8]. For support, General Star cites to *Adrian Energy* and *Harding*. *Id.* at 7–8. However, *Adrian Energy* and its progeny are highly distinguishable from the present case. Unlike *Adrian Energy*, *Harding*, and others cited above, this case does not involve claims for declaratory relief and claims for monetary or injunctive relief. This case involves one rescission claim (in which General Star seeks only an order of rescission) and three claims for declaratory relief.

This distinction is important. First, in *Adrian Energy*, the Sixth Circuit addressed the specific scenario where a plaintiff seeks "relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address*." 481 F.3d at 422 (emphasis in original). The Sixth Circuit did not address how to proceed if a plaintiff seeks a *judgment of rescission* in addition to a declaratory judgment. And none of the above-cited district court cases involve claims for rescission; each involves claims for declaratory and *monetary* relief. Obviously, a judgment for monetary damages is quite different from a judgment declaring a contract to be null and void. And injunctive relief either prohibits or mandates action from the defendant, a form of relief that differs substantially from a mere judgment of rescission. Thus, in the years following *Adrian Energy*, district courts within this circuit have been quick to point out that the Sixth Circuit has never directly addressed which abstention doctrine, if any, applies

- 14 -

when claims for declaratory relief are mixed with *rescission* claims. *See, e.g.*, *Principal Life*, 2013 WL 1625132, at *4 n.2 (distinguishing case from *Harding* because that case did not involve a rescission claim and *Adrian Energy* did not directly address the issue of what abstention analysis applies when rescission claims are involved). This Court agrees and does not believe that the limited holding of *Adrian Energy* controls this case.

Further, most of the district court cases relying on *Adrian Energy*, including the *Harding* case cited by General Star, are procedurally distinguishable. In *Harding* and several of the other above-cited cases, the parties found themselves in federal court only after the matter was removed from state court; there was no active state proceeding. *See, e.g.*, *Tibbits*, 2020 WL 4333546; *Harding*, 2011 WL 211528; *Knowlton*, 2007 WL 4365690. In those cases, the issue of abstention arose after the plaintiffs sought remand; thus, the issue before the federal court was whether removal was appropriate. *See, e.g.*, Knowlton, 2007 WL 4365690, at *3. In fact, at least one court found that its discretionary jurisdiction over the declaratory claims was "irrelevant to the question of remand." *Id.* at 3. However, that question remains at the forefront of the present proceedings. Here, General Star filed its complaint in this Court, generating a separate federal lawsuit. *See* [R. 1 (Complaint)]. There remains an active and ongoing related civil lawsuit in state court (as well as an ongoing state criminal proceeding). Thus, the issue before the Court is *not* whether General Star's filing in this Court was procedurally proper, but rather, whether and to what extent this Court may exercise its discretion to accept or reject jurisdiction over General Star's claims.

In sum, the Court finds that *Adrian Energy* and its progeny are distinguishable from the present matter. Given the nature of the claims in those cases, and their procedural postures, they do not provide an answer to the question faced by this Court—namely, which abstention doctrine

applies to a complaint that includes claims for both rescission and declaratory relief.  As such, the Court need not determine whether any of the above-cited district court cases have taken the correct approach. Rather than rely on such cases—which involve distinctly different claims and different procedural postures—the Court turns to cases involving claims for declaratory relief and claims for rescission, many of which are both factually and procedurally similar to the current case.

### B.  Claims for Declaratory Relief and Claims for Rescission

As already noted, the Sixth Circuit has never directly addressed which abstention doctrine applies to a suit involving both rescission and declaratory judgment claims. However, many district courts within this circuit have been faced with this issue. In several cases, the district courts seem to assume that a claim for rescission (however styled) is a claim for declaratory relief, and those courts therefore apply *Grand Trunk* to all claims. *See Chicago Ins. Co. v. Lammers*, No. 06-387-KSF, 2007 WL 1240260 (E.D. Ky. Apr. 27, 2007); *New Hampshire Ins. Co. v. Home Sav. and Loan Co. of Youngstown*, No. 4:05-cv-02179, 2008 WL 2446066 (N.D. Ohio June 16, 2008), *vacated and reversed on other grounds in New Hampshire Ins. Co. v. Home Sav. and Loan Co. of Youngstown, Ohio*, 581 F.3d 420 (6th Cir. 2009)[4]; *Liberty Mut. Fir Ins. Co. v. Salmo*, No. 09-13482, 2010 WL 2740170 (E.D. Mich. July 12, 2010). At least one court has taken a deeper look at the nature of the rescission claim and, upon concluding that it should be considered declaratory in nature, has applied the *Grand Trunk* factors to the entire complaint. *See Principal Life Ins. Co. v. Doctors Vision Center I, PLLC*, No. 5:12-CV-00125-JHM-LLK, 2013 WL 1625132 (W.D. Ky. Apr. 15, 2013). In that case, *Principal Life*, the district

---

[4] The Sixth Circuit ultimately found that the district court lacked subject matter jurisdiction, thereby obviating the need to consider discretionary jurisdiction under the Declaratory Judgment Act. It therefore vacated the district court's analysis on that issue, but without criticism of that approach.

court considered the varied approaches of other circuits and found that the "heart of the action" test best "promotes flexibility" and "allow[s] district courts to treat different cases differently based on their fundamental character." 2013 WL 1625132, at *3–4. The court ultimately found that the rescission claim was "closely intertwined with the declaratory judgment claim, with both claims hinging on the proper interpretation of the subject insurance policy." *Id.* at *4. As a result, the court found the "heart of the action" to be declaratory and applied the *Grand Trunk* factors. *Id.*

The Court finds these cases to be more relevant and persuasive than *Adrian*, *Harding*, and the other out-of-circuit case law cited by General Star. Notably, the claims involved in these various district court cases are nearly identical to the claims raised in the present suit— specifically, claims for rescission of an insurance contract and claims for declaratory relief relating to an insurance company's duty to defend and indemnify an insured in a state court proceeding. *Salmo*, 2010 WL 2740170; *New Hampshire Ins. Co.*, 2008 WL 2446066; *Lammers*, 2007 WL 1240260; *see also QBE Ins. Corp. v. The 1919 Corp.*, No. 12-12887, 2012 WL 4715215 (E.D. Mich. Oct. 2, 2012) (applying *Grand Trunk* to similar rescission and declaratory claims). Further, these cases are also procedurally similar to the present matter. The federal suits were initiated by the insurance companies, each of which sought clarification of its rights and obligations under the insurance policy due to a pending state court lawsuit. *See QBE Ins. Corp.*, 2012 WL 4715215; *Salmo*, 2010 WL 2740170; *New Hampshire Ins. Co.*, 2008 WL 2446066; *Lammers*, 2007 WL 1240260. And many of the above-cited cases are even factually similar, in that they involve alleged material misrepresentations in an insurance contract. *See QBE Ins. Corp.*, 2012 WL 4715215; *Salmo*, 2010 WL 2740170; *New Hampshire Ins. Co.*, 2008 WL 2446066; *Lammers*, 2007 WL 1240260. Given the similarities between these cases and the

present matter, the Court finds these post-*Adrian* district court cases (all from within this circuit) to be highly persuasive.

However, rather than merely assume that the rescission claim is declaratory in nature as some district courts have done, the Court will take a closer examination into the true nature of the rescission claim. *See generally Principal Life*, 2013 WL 1625132 (applying the "heart of the action" test). In this case, General Star seeks a judgment of rescission and declaratory judgments relating to its duties to defend and indemnify. In other words, General Star asks this Court to declare that the contract is void and to alternatively declare its rights and obligations under the insurance contract. It does not seek monetary or injunctive relief. As such, the Court finds that this case presents only claims for declaratory relief. This conclusion is supported by the case law cited above, where courts within this circuit have applied *Grand Trunk* to the entirety of a complaint that raises claims for both rescission and declaratory judgment. *See Principal Life*, 2013 WL 1625132; *QBE Ins. Corp.*, 2012 WL 4715215; *Salmo*, 2010 WL 2740170; *New Hampshire Ins. Co.*, 2008 WL 2446066; *Lammers*, 2007 WL 1240260. The Court therefore finds that this case is declaratory in nature, and it will apply the *Grand Trunk* factors.

In reaching this conclusion, the Court is mindful of at least one case out of this circuit in which the district court did *not* apply the *Grand Trunk* factors to a case involving mixed claims for rescission and declaratory relief. In *Q Holding Co. v. REPCO, Inc.*, No. 5:17-CV-445, 2017 WL 2226730 (N.D. Ohio May 22, 2017), the plaintiff brought suit in federal court, alleging that the defendant had fraudulently induced it into entering a sales representative agreement. *Id.* at *1. For relief, the plaintiff sought a declaratory judgment that the contract was void ab initio and, alternatively, rescission. *Id.* The court summarily concluded that the rescission claim "provides an independent basis for jurisdiction," and because it was based on the same set of facts as the

declaratory judgment claim, "it makes little sense to consider the rescission claim but decline to hear the declaratory judgment claim." *Id.* at *3 (citations omitted). This Court is not persuaded by that conclusory analysis. First, *Q Holding* is both procedurally and factually distinguishable. That case did not involve a separate state court lawsuit, nor did it involve an insurance policy contract dispute. Further, the cases relied upon by that court are either from outside this circuit (with no explanation provided as to why the Sixth Circuit would or should follow that circuit's practice), *see Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998), or are otherwise distinguishable in that they involve claims for declaratory and *monetary* relief, not claims for declaratory relief and *rescission*. *See Farris*, 617 F.Supp.2d 654; *Knowlton*, 2007 4365690. As such, *Q Holding* is not persuasive here.

In sum, because no monetary or injunctive relief has been sought and instead General Star seeks only declaratory judgments (regardless of whether they are styled as such or are referred to as an "order of rescission"), the Court finds that this case is purely declaratory in nature. The Court therefore concludes that application of the *Grand Trunk* factors (to all claims) is appropriate.

### C. *Grand Trunk* Analysis

As previously noted, the Declaratory Judgment Act "[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Grange*, 565 F.Supp.2d at 785 (quoting *Wilton*, 515 U.S. at 286) (internal quotation marks omitted). However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also Hoey*, 773 F.3d at 759 (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"). As this Court has explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts,

we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565

F. Supp. 2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district

courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment

actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an

ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373

F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule

exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing

*Bituminous*, 373 F.3 at 812–13).

     The Sixth Circuit has identified two general principles to determine whether it would be

appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory
> judgments are (1) when the judgment will serve a useful purpose in clarifying and
> settling the legal relations in issue, and (2) when it will terminate and afford relief
> from the uncertainty, insecurity, and controversy giving rise to the proceeding. It
> follows that when neither of these results can be accomplished, the court should
> decline to render the declaration prayed.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)

(citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors

to guide district courts as they consider whether to exercise jurisdiction under the Declaratory

Judgment Act:

> (1) whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the
> legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of
> "procedural fencing" or "to provide an arena for a race for res judicata;"
> (4) whether the use of a declaratory action would increase friction between our
> federal and state courts and improperly encroach upon state jurisdiction; and
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court considers each of the *Grand Trunk* factors in turn.

### 1. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008); *see also Philadelphia Indemnity Ins. Co. v. Priority Pest Protection, LLC*, 398 F.Supp.3d 280, 283 (M. D. Tenn. 2019) (discussing Sixth Circuit split relating to the first factor). The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Flowers*, 513 F.3d at 555 (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split:

> The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios. In [*Bituminous Casualty Corporation v. J & L Lumber Co.*] for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. We noted that the question of employment status was already being considered in two separate state court proceedings. We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be

binding as to him and could not be res judicata in the tort action." Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy."

In [*Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003)] we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue.

*Id.* at 555–56 (internal citations omitted).[5] Thus, this factor presents competing policy considerations and a case-specific inquiry.

In applying this factor, the Court considers the specific relief requested by General Star. First, General Star asks this Court to find that it is "entitled to rescind the policy of insurance it issued to Terry Flinchum CPA Inc., based upon material misrepresentations made in the policy application" and enter an order of rescission that "void[s] the General Star Policy." [R. 1, pp. 10–11]. General Star next asks the Court to declare that it is not obligated to defend or indemnify Terry Flinchum because he "knew of acts, errors or omissions that might reasonably be expected to give rise to a Claim or Suit against him" at the time he completed his Renewal Application, and therefore, the underlying state civil suit is beyond the scope of coverage. *Id.* at 10–11. General Star also asks the Court to declare that it is not obligated to defend or indemnify any

---

[5] This Court has also examined the approach in *Grange* and *Abundance Coal*. In *Grange*, the Court reviewed Sixth Circuit case law and ultimately "adopt[ed] an approach that is not wholly consistent with either of the two lines of precedent." 565 F. Supp. 2d at 788. The Court "interpret[ed] the first factor to ask whether the ultimate controversy is settled by the federal action and interpret[ed] the second to ask whether the federal action can clarify the legal relations of at least two parties and settle at least one discrete issue." *Id.* The Court adopted a similar approach in *Abundance Coal*, first asking whether a declaratory judgment would settle the ultimately controversy in the state court proceeding, No. 12-39-ART, 2012 WL 3067579 at *3, then asking whether the case would "serve a truly 'useful purpose' by clarifying legal relationships among the parties." *Id.* at *6 (citations omitted); *see also Philadelphia Indemnity Ins. Co. v. Priority Pest Protection, LLC*, 398 F.Supp.3d 280, 284 (M.D. Tenn. 2019). However, the Sixth Circuit has not expressly adopted this approach.

insured because Miracle seeks damages arising out of bodily injury, emotional distress, and/or mental anguish, thereby triggering Exclusion 8 (the Bodily Injury Exclusion), and because that state suit arises out of a criminal act, thereby triggering Exclusion 1 (the Criminal Acts Exclusion applies).

Having clarified the scope of the requested relief, the Court turns to the parties' arguments. As to this first factor, Miracle argues that the issues presented by General Star are "of collateral concern to the ultimate controversy" in the state civil action. [R. 24, p. 5]. Those issues, Miracle argues, "could easily be addressed in state court where the factual matters will be heard at the conclusion of the criminal matter that might be determinative in many ways as to the ultimately controversy of liability." *Id.* The remaining defendants similarly argue that a declaratory judgment in this case will do nothing to settle the issues in the state lawsuit, and all issues can be properly heard by the state court. *See* [R. 25-1, pp. 4–5].

In response, General Star insists that the "a declaration of 'no coverage' would clearly settle the dispute between General Star and Flinchum," and would bind Miracle as well. *See* [R. 26, p. 9]. General Star also focuses on its request for a declaratory judgment that it is has no duty to defend the state court defendants, arguing that this issue can be resolved by looking to the state court complaint and the policy, without delving into any factual matters. *Id.* at 9–10. In its response brief, General Star also argues that all coverage issues in this case "can be settled as a matter of law, as the material facts are undisputed and the questions presented do not depend upon any factual findings by the state court in the underlying tort action." [R. 29, p. 6].

The parties clearly dispute which factual issues are relevant. For instance, Defendant Miracle insists that the factual issues in the state civil proceeding are necessary to resolve the coverage issues here. *See* [R. 24, pp. 7–8 (making this argument in the context of the fourth

*Grand Trunk* factor)]. More specifically, she argues that the policy's Criminal Acts Exclusion will not apply if Flinchum is found not guilty in state court, and the state court will ultimately determine "whether there is liability/culpability and whether the acts are criminal, intentional or negligent." *Id.* at 7. This argument seems to hinge on an understanding that the Criminal Acts Exclusion (and the Bodily Injury Exclusion) are triggered by a finding of liability, rather than by mere allegations of misconduct or bodily injury.

General Star, on the other hand, appears to argue that these exclusions are triggered not by the facts proven in the underlying civil lawsuit, but by the allegations contained within that complaint. For example, the policy's Criminal Acts Exclusion provides that General Star has no obligation to pay damages or to provide a defense in connection with any claims or suits "*based on or arising out of* . . . [d]ishonest, fraudulent, criminal, knowingly wrongful, willful, malicious or intentional Wrongful Act(s)." [R. 1-3, p. 19 (emphasis added)]. Thus, General Star argues, it is necessary only to look to the *allegations* in the state court complaint to determine if that action is "based on or arising out of" acts that trigger the policy's exclusion.

In considering these competing interpretations, the Court notes that Miracle expends little, if any, effort to explain the bases for her interpretation; she does not cite to any provision of the policy or any case law or authority to support her interpretation. General Star's interpretation, on the other hand, appears to be supported by the plain language of the policy. For purposes of these present motions to dismiss, the Court will assume (without deciding) that General Star's interpretation is correct. Accordingly, to determine whether the relevant exclusions apply in this case, the Court would need only turn to the allegations in the state court complaint.

Furthermore, General Star argues that it is entitled to a judgment of rescission based on Flinchum's failure to disclose a potential claim or suit against him when he "knew of acts, errors or omissions that might reasonably be expected to give rise to" such a claim or suit at the time he completed the Renewal Application. No party disputes that, at the time Flinchum completed the Renewal Application, he was aware of his criminal indictment in state court. The Flinchum Defendants do briefly argue that facts will be produced "with respect to the reasons for answering application questions," [R. 25, p. 6], but they do not argue that those facts will be produced in the state court civil suit. No defendant has argued that General Star's rescission claim hinges on facts that will be developed in the state court lawsuit.

The Court therefore finds that the coverage issues at play in this federal declaratory suit can be resolved without relying on the state court to resolve questions of fact or law. *See Frankenmuth*, 510 F.Supp.3d at 492. Stated another way, neither the coverage issues in this case, nor any question of fact or law relevant to those issues, is currently being litigated in state court. *Id.*; *see also United Specialty, Ins.*, 936 F.3d at 398. Resolution of these coverage issues will therefore settle the controversy in this case. Accordingly, the Court finds that this first factor weighs in favor of exercising jurisdiction. However, the Court is mindful that "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" counsel against exercising discretion. *Flowers*, 513 F.3d at 555; *see also Grange*, 565 F. Supp. 2d at 788–89 (acknowledging that a federal declaratory action would resolve the discrete question before the Court but recognizing that it would not "settle the ultimate controversy"). The Court therefore finds that the first factor weights only slightly in favor of exercising jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 492 (reaching same conclusion).

### 2.   Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Biuminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454). As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted); *see also Priority Pest Protection, LLC*, 398 F.Supp.3d at 284 (explaining Sixth Circuit split relating to the second factor). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Flowers*, 513 F.3d at 557. It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case—"namely, the contractual duties of indemnification owed by [the insurance company] to the [declaratory defendant]." *Id.*  The Court noted that, "[w]hile [the declaratory action] did not clarify all of the

legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty*, 936 F.3d at 398–99; *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

In the present case, the requested relief will clarify the coverage issues between General Star and the Flinchum Defendants. More specifically, it will clarify whether the insurance policy at issue remains valid and, if so, whether General Star owes a duty of defense and/or indemnification to the Flinchum Defendants in the state civil action. Resolution of these coverage issues will not resolve the underlying issues present in that state action. *Flowers*, 513 F.3d at 557. Those issues instead revolve around Flinchum's alleged misconduct against Miracle and his liability for assault and battery, false imprisonment, intentional infliction of emotional distress, breach of his fiduciary duties, and professional negligence. *See* [R. 1-7, pp. 6–10]. Such issues are not dependent on this Court's resolution of the coverage issues in this case. Thus, while this declaratory action may "not resolve the relative rights of the parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party." *United Specialty*, 936 F.3d at 399. The Court has no reason to believe that the resolution of those coverage issues will complicate or confuse the state court's liability issues. *Flowers*, 513 F.3d at 557. Accordingly, the Court finds that this action will clarify the legal relations of the parties in this case, and this factor therefore weighs in favor of exercising jurisdiction.

### 3. Factor Three

The third *Grand Trunk* factor asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. Typically, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 558 (6th Cir. 2008)).  However, plaintiffs who file their suits only days or weeks before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted). In other words, this factor asks "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* (quoting *Dale*, 386 F.3d at 789) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third fact is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814. The Sixth Circuit has also noted that "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").  Stated another way, "the lack of improper motive in filing alone cannot justify the exercise of jurisdiction when

all the other factors weigh on the side of declining." *Bituminous*, 373 F.3d at 817 (citation

omitted).

In the present case, there is no evidence of an improper motive, and no defendant argues

that any such improper motive exists or that any procedural fencing has been attempted. *See,*

*e.g.*, [R. 24, p. 6 ("This defendant has no evidence that Plaintiffs in this case have an ulterior

motive."); R. 25-1, p. 5 ("[T]here does not appear to be any procedural fending or a race for res

judicata in this action.")].

The Court agrees that there is no evidence of procedural fencing here. The present action

was filed just over two months after Miracle filed her civil lawsuit in state court. While it is true

that General Star could have filed for declaratory relief in that court, it was not obligated to do

so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an

issue which the state court would eventually consider, the Declaratory Judgment Act gives

Scottsdale the right to do precisely that, especially when the state court litigation has been

ongoing for several years without resolving the issue."). The Court therefore finds that there was

no improper motive behind General Star's filing in this Court. However, as already explained,

"this factor should be afforded little weight in cases where . . . there is no evidence of procedural

fencing." *Massachusetts Bay*, 759 F. App'x at 439 (citing *Travelers*, 495 F.3d at 272). The Court

therefore finds that the third *Grand Trunk* factor is neutral, and the Court will afford it little

weight.

### 4.  Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction

between our federal and state courts and improperly encroach upon state jurisdiction." *Grand*

*Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or

complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues.").  On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3)  whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

**a.  Subfactor One**

Under the first subfactor, the Court must consider "whether the underlying factual issues are important to an informed resolution of the case." *Id.* at 814 (citing *Roumph*, 211 F.3d at 968) As this Court has explained,

[w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but

> when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction.

*Grange*, 565 F. Supp. 2d at 789 (citing *Flowers*, 513 F.3d at 560). For example, in *Flowers*, the parties agreed that the issues raised in the federal declaratory action were distinct from those raised in the state court litigation. *Flowers*, 513 F.3d at 560. Because the issues were distinct, that subfactor weighed in favor of exercising jurisdiction. *Id.*; *see also Grange*, 565 F. Supp. 2d at 789. Similarly, in *United Specialty*, the Sixth Circuit found this factor to weigh in favor of exercising jurisdiction because a comparison of the state court complaint and the federal declaratory judgment complaint revealed "no as-yet-unresolved factual issues [in the state court case] that stand between [the] federal court and its informed resolution of the coverage question." 936 F.3d at 400. On the other hand, if the declaratory judgment action is dependent on factual findings that will be made by the state court or an unresolved question of state law, this subfactor weights against exercising jurisdiction. *See Massachusetts Bay*, 759 Fed.Appx. at 439–440; *Bituminous*, 373 F.3d at 815; *Travelers*, 495 F.3d at 272.

In this case, the Court has already explained that, based on General Star's interpretation of the policy, there do not appear to be any factual issues in the state court proceeding that will have any bearing on the coverage issues at play here. Instead, the question of whether the Criminal Acts or Bodily Injury Exclusions apply would be based on language of the policy and the allegations in the state court complaint. Further, while the parties may dispute that Flinchum dishonestly answered the questions on his Renewal Application (and specifically those questions and provisions requiring him to advise of any potential claims or suits), no party has pointed to any factual issues in the state court proceeding that will have any bearing on that issue. Thus, this case is not dependent on the factual findings of the state court. "Furthermore, the coverage issues

are not before the state court; they are separate and distinct issues from the liability issues litigated in [Pulaski] Circuit Court." *Frankenmuth*, 510 F.Supp.3d at 496. This first subfactor therefore weighs in favor of exercising jurisdiction.

### b. Subfactor Two

The second subfactor asks "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). This subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560.  For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454). However, when the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Id.* (citing *Travelers*, 495 F.3d at 272).  However, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4 (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law . . . indicat[ing] the possibility of friction with the state court").  In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

In the present matter, there are no novel state law or fact issues to be resolved, and the coverage issues raised by General Star are not before the state court, nor is General Star a party to the state court action. These facts weigh in favor of exercising jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 497 (citing *Grange*, 565 F. Supp. 2d at 790). However, as this Court explained in *Frankenmuth Mutual Insurance Company v Balis Campbell, Inc.*, "novelty is not the only concern." *Id.* (quoting *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4) (internal quotation marks omitted). Like this case, *Frankenmuth* presented a question of state, not federal, law. *Id.* This Court explained that, "novel or not," the state law issue could be resolved by the state court, which had a "superior ability to apply its own law." *Id.*; *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). The Court found that this weighed against the exercise of jurisdiction, and as a result, this second subfactor was, at best, neutral. *Frankenmuth*, 510 F.Supp.3d at 497.

The Court finds that the same conclusion is appropriate here. Like in *Frankenmuth*, the second subfactor "weighs in favor of jurisdiction to the extent this case lacks any novel state law issues (and the state court is not considering the issues), but it weighs against jurisdiction because it raises only issues of state law, which the state courts are in a better position to apply." *Id.* (citing *Grange*, 565 F.Supp.3d at 790); *see also United Specialty*, 936 F.3d at 401 (noting that although the "general presumption" that state courts are in a better position to decide state law questions has less force when the state law is clear and the state court is not considering the issues, "that does not necessarily mean that the concern is completely dispelled in these circumstances"). Accordingly, the Court finds that this second subfactor is, at best, neutral.

c. **Subfactor Three**

Under the third subfactor, the Court must consider "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968). In other words, this subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in cases involving insurance contract interpretation issues, the Sixth Circuit has held that such issues are "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

In this case, the Court finds that this federal lawsuit implicates state policy that could be frustrated by the Court's exercise of jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 497. As the Sixth Circuit has made clear, "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." *Flowers*, 513 F.3d at 561. This Court agrees with that analysis. *See Frankenmuth*, 510 F.Supp.3d at 497. Furthermore, the Sixth Circuit recently endorsed that same analysis in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely

entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this

case—which all relate to the interpretation of an insurance policy—and state policy is clear.

"Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is

obvious—'[n]o federal-law questions are involved in the coverage issue' before the Court."

*Frankenmuth*, 510 F.Supp.3d at 498 (quoting *United Specialty*, 936 F.3d at 401); *see also*

*Massachusetts Bay* at 441 ("[N]o federal laws are at issue."). Like the *Frankenmuth* case, "[t]his

case does not turn on federal law, but rather Kentucky's interpretation of its insurance

contracts—state law that is 'guided by state public policy.'" *Frankenmuth*, 510 F.Supp.3d at 498

(quoting *Flowers*, 513 F.3d at 561). This subfactor therefore weighs strongly against exercising

jurisdiction.

In sum, the first subfactor weighs in favor of exercising jurisdiction; the second subfactor

is neutral; and the third subfactor weighs strongly against exercising jurisdiction.  The fourth

*Grand Trunk* factor is therefore best described as neutral or weighing slightly against exercising

jurisdiction. *See generally id.* (reaching similar conclusion).

### 5.  Factor Five

The final *Grand Trunk* factor asks "whether there is an alternative remedy which is better

or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving similar insurance

coverage issues, the Sixth Circuit has held that an alternative remedy is available through a

declaratory judgment under state law or an indemnity action in the state court at the conclusion

of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*,

759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley,*

*Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir.

1986). In those cases, the Court noted that the coverage issues involved questions of state law;

they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562. On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Id.* (citations omitted).

However, in *Flowers*, the Sixth Circuit clarified that, "rather than applying a general rule," the relevant inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* In that case, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.* On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory

judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

As to this fifth factor, Defendant Miracle argues that these insurance obligation issues are routine matters in state courts, where insurers often proceed under a reservation of rights; the Pulaski Circuit court (which is handling both the civil and criminal matter) "has the bulk of the factual issues subjudice," while the legal issues all involve state law; and the state's interest in this case is high because "this case presents an intersection of state criminal law, professional malpractice, negligence, and public policy issues." [R. 24, p. 9]. The Flinchum Defendants similarly argue that General Star has an adequate remedy in state court. [R. 25-1, p. 7]. In response, General Star insists that there are no novel issues of Kentucky law, and it would be forced to file a new lawsuit in state court if the present matter is dismissed. [R. 26, pp. 12–13].

The Court is sympathetic to General Star's argument. In many cases, a state action to resolve these coverage issues would not be resolved until after the state proceeding, with the insurance company proceeding under a reservation of rights in the meantime. *See generally Frankenmuth*, 510 F.Supp.3d at 500 (discussing alternative remedies); *see also Flowers*, 513 F.3d at 562 (finding that "[s]uch a delayed alternative would be worse, not better, than seeking a federal declaratory judgment"). On the other hand, there are no issues of federal law at play in the present action; the entire matter can and will be resolved upon application of state law. That state law may be well-settled, as General Star suggests, thereby allowing a federal court to "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on

their jurisdiction." *United Specialty*, 936 F.3d at 400. "However, Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case." *Frankenmuth*, 510 F.Supp.3d at 500 (citing *Flowers*, 513 F.3d at 562). Thus, even though a state declaratory action "would provide [General Star] with the same remedy that it seeks from this Court, 'the state remedy has the advantage of allowing the state court to apply its own law.'" *Id.* (quoting *United Specialty*, 936 F.3d at 401); *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law"). Furthermore, as the Court noted in *Flowers*, the state court actions could conceivably be filed in the same court and consolidated, thereby allowing a single judge to "resolve all issues and avoid[] the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res judicata issues." *Id.* (citing *Flowers*, 513 F.3d at 562); *see also Massachusetts Bay*, 759 Fed. App'x at 441 (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could be resolved by the same judge.'" (quoting *Flowers*, 513 F.3d at 562)); *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *5 (citation omitted). Lastly, the Court has no reason to believe that General Star's interests would not be adequately protected in a state court declaratory action, nor does the Court have any reason to believe that the state court would be unable to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

The Court therefore finds that a declaratory action in the state court is a better remedy than this federal declaratory action. This fifth factor thus weighs heavily against accepting jurisdiction.

### 6.  Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Hoey*, 773 F.3d at 759. This Court has stated, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *2. While this may be true, the Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis. *See, e.g.*, *Frankenmuth*, 510 F.Supp.3d at 503.

In doing so, this Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this way, the Declaratory Judgment Act—with its "textual commitment to discretion, and the breadth of leeway [the Supreme Court] always understood it to suggest"—is distinguished "from other areas of law in which concepts of discretion surface." *Id.* at 286–87. Thus, federal district courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286. Further, the "facts bearing on the usefulness of the declaratory remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* With this "unique and substantial" discretion in mind, the Court balances the five *Grand Trunk* factors, mindful that "[a]nother court might have made a different choice." *See Hoey*, 773 F.3d at 760 (recognizing that "[a]nother court might have made a different choice—some judges regularly decline jurisdiction in cases like this").

In this case, the first and second factors weigh in favor of accepting jurisdiction (and the first factor only slightly so). The third factor—whether the declaratory plaintiff is engaging in procedural fencing—is neutral. Given the lack of evidence to suggest procedural fencing, the

Court assigns this third factor little weight. *Massachusetts Bay*, 759 Fed. App'x at 439 (citation omitted). The fourth factor is also neutral (or leans slightly against exercising jurisdiction). Lastly, under factor five, the availability of a better alternative remedy in state court weighs heavily against accepting jurisdiction.

Against these factors, only two of which weigh in favor of exercising jurisdiction, the Court must balance "considerations of efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759. Here, these considerations weigh against exercising jurisdiction. First, the parties are involved in a dispute in state court that involves well-established state law causes of action such as negligence, intentional infliction of emotional distress, and assault. If the Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp. 2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters. It would also deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but rather of state-regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Simply stated, General Star has an adequate (even superior) remedy via a state court declaratory judgment action or possible intervention in the state court proceeding. *Id.* at 792; *see also Frankenmuth*, 510 F.Supp.3d at 502.

Further, the Court is mindful that it should not exercise jurisdiction under the Declaratory

Judgment Act "unless it serves a useful, practical purpose." *Grange*, 565 F. Supp. 2d at 792

(quoting *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). "[I]f our decision to keep a matter does

nothing more than cause the parties to engage in litigation on two fronts, we are neither

furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted).

Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when

considered together and balanced against considerations of efficiency, fairness, and federalism,

weigh against the exercise of jurisdiction.

### B.   CONCLUSION

For the reasons set forth above, the Court finds that this case is declaratory in nature and

the appropriate abstention analysis falls under *Grand Trunk*.  Having balanced the five *Grand

Trunk* factors with "underlying considerations of efficiency, fairness, and federalism," and

having considered the unique facts of this case, the Court will exercise its broad discretion to

decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at

286 (recognizing that district courts are afforded "unique and substantial" discretion under the

Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.   Defendant Bridgett Miracle's Motion to Dismiss, [**R. 24**], is **GRANTED**.

2.   Defendants Terry Flinchum CPA, Inc. and Terry Flinchum's Motion to Dismiss,

     [**R. 25**], is **GRANTED**.

3.   The Court declines to exercise its discretion under the Declaratory Judgment Act, 28

     U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**. The

     **Clerk of Court** shall **STRIKE** this case from the Court's active docket.

This the 12th day of June, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY